FILED
John E. Triplett, Clerk of Court
United States District Court

*By JamesBurrell at 11:38 am, Feb 03, 2025*

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA

## Chief Judge R. Stan Baker

| Plaintiff, Lori Ann Myles Pro se | Defendant. Civil Action |
|---|---|
| | • Allstate Insurance Company<br>• GEICO Insurance Company<br>• Donald R. Heathman, (Deceased), GEICO Client (Deceased) Nugent Law Firm of Georgia<br>• Nugent/Matson Law Firm of Augusta, Georgia<br>• EnableComp and, the<br>• Augusta University Medical Trauma Unit Billing, and Payment Division of the Hospital |

### ORDER REQUEST

This case is before the Court on the Plaintiff's Motion for a Summary Judgment. For the reasons discussed here in, related to a "Head-On Collision" Auto Accident caused by GEICO Insured Client, Donald R. Heathman, (Deceased) who was "Decapitated," during the accident on July 13, 2023 at 9:48pm.

I, Lori Ann Myles, the Plaintiff was insured by ALLSTATE's policy bring forth allegations of "bad faith" against ALLSTATE and GEICO insurance companies. The Plaintiff's request is brought to the United States District Court with the request on the principle of leniency, which allows pro se litigants greater flexibility with the standards for pleadings. McNeil v. U.S., 508 U.S. 106, 113 (1993). A pro se complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Estelle v. Gamble, 429 U.S. 97, 106 (1976) (internal quotations omitted). The Court has previously recognized that this policy "provides pro se laypersons with certain benefits while navigating the often-difficult legal labyrinth, [and] also provides Federal courts the ability to relax certain procedural rules when dealing with pro se parties, all in the interests of justice." Jones v. Nicholson, No. 1:07-cv-16 (WLS), 2011 WL 2160918, at *3 (M.D. Ga. Jun. 1, 2011).

## INTRODUCTORY MATTERS

The Plaintiff, who is proceeding pro se, has brought suit against her representing Attorney/Lawyers, the **Nugent Lawfirm**; **Jenna Matson, Esquire**, the insurance carrier, **ALLSTATE**, the insurance carrier for the deceased, **GEICO**, and the medical provider, **EnableComp/AU Medical Center Trauma Unit.**

As individual units they are indicated below:

1. **Allstate Insurance Company**
2. **GEICO Insurance Company**
3. **GEICO Insured Client, Donald R. Heathman, (Deceased)**
4. **Nugent Law Firm of Georgia**
5. **Nugent/ Jenna Matson Law Firm of Augusta, Georgia**
6. **EnableComp Billing LLC (Third-Party Billing, and Payment Division of the Augusta University Medical Trauma Hospital)**

## ORDER

**The Plaintiff is seeking full damages in the amount $77,843.35.** Exhibit 1: in the Appendix verifies, and factually shows Loss of Wages, Loss of Property, and time consumed with mental stress a part from the actual collision of the "Head on Collision" with the Deceased, Donald R. Heathman, (Deceased). The Plaintiff accuses the Defendants of Collusive Fraudulent Practices associate with Insurance Fraud, Medical Sabotage, and Attorney Misrepresentation during the victimization, and violation of Plaintiff's Civil Rights as a Insured Client, African American Female, and Victim of Circumstances beyond her control. Plaintiff alleges that Coercion, and Extortion were used as a "Teamed" event" from these "Big Brother Corporate Agencies, Law Firm, and Attorney"

## ALLSTATE INSURANCE:

## GEICO INSURANCE:

The Plaintiff is seeking full damages in the amount **$77,843.35** for the insurer's failure to

pay an Automobile Insurance Loss Claim, ("Allstate") against Allstate Property& Casualty Insurance Company("Allstate") pursuant to OCGA §33-7-11(j), a statute which penalizes an insurer for bad faith refusal to pay a demand for uninsured or underinsured motorist("UM") insurance.

For the reasons discussed herein, related to a "Head-On Collision" Auto Accident caused by a now "Decapitated, Intoxicated, Driver on July 13, 2023 at 9:48pm whose efforts proved fatal to himself, while trying to destroy the lives of others who were only saved through "Mercy."

At the time of the accident, Lori Myles, Plaintiff was insured with Allstate under an automobile policy that provided $50,000.00 worth of UM Coverage.  As a Legal Representative, Jenna Matson stated that she requested this UM Coverage, and Allstate told her that I was not legally eligible. My Allstate Insurance form shows that I was indeed eligible and insured. Allstate's "bad faith" refusal to pay violates the law pursuant to OCGA §33-7-11.  I was told by my ALLSTATE Client Representative, Danae El Bakkouri to wait.  I need not call anyone, they would work out the payment from the other insurance company, GEICO.

According to Georgia Code Title 33, Insurance § 33-1-9, This was done because after acknowledging no representation, no communication with my chosen representative (Nugent Law Firm).  Furthermore, I was presented with a Settlement that showed me as an Uninsured Medical Patient in the hospital with my Attorney's knowledge.  She made no attempt to change it or show that I was falsely represented.  I needed someone who was fighting with me, not Against Me, as the Plaintiff.  The Extortion of Medical Expenses, Extortion of Insurance Funds associated with My Claims, Settlement and Added Trauma and Stress Related to a "Head-On Collision" Auto Accident may have been caused by a "Decapitated, Intoxicated, Driver on July 13, 2023, at 9:48pm.

Yet, the Defendants added to my pain.  The law states that Georgia Code Title 33., Insurance § 33-1-9 which is current as of March 28, 2024, that whether the offender is a Lawyer, Attorney, an Insurance Agent, a Medical Administrator, and/or Business Owner, they cannot knowingly defraud. All of the Defendants knew, I told them, and submitted all uploads, information, and forms to support their discrepancies.  They paid me no attention

Furthermore, the Allstate Insurance company is accused of perpetrating a "Collusive-Effort" to Pressure, Coerce, Squeeze, and "Wait Out "Georgia's Two-Year Mandated

Insurance Settlement Law." The manipulation of Dollar amounts associated with the "Services Rendered," are not only wrong, but an obvious attempt to use Fraudulent Forms, Associated Dummy Companies, with empty building addresses, and Corporate Pressure, by issuing fraudulent, "Sham, and Duplicity" Liens against Insurance Monies, by changing the Plaintiff's Insurance Policy, and Submission Dates, Times, and Events.

**NUGENT LAW FIRM: Jenna Matson, Esquire**.

The Plaintiff is seeking full damages in the amount **$77,843.35** The Nugent Law firm "Contract" states After not hearing from my Attorney, yet healing from the traumatic event; the Plaintiff made several attempts to reach the law firm through calls, emails, to ask for status reports, because of the pain, suffering, trauma, and stress; but because of Plaintiff's employment status was in jeopardy because of return dates, loss of wages, employment, and Personal Leave accruals were slim to none.  Plaintiff received more correspondence when I asked for a "Termination from the Firm" than I had during the correspondence as a Client.  After relentless request, I finally received the Law firm's acknowledgement with a meeting request. The request from my Lawyer was that I would have to end all Physical Therapy Appointments with Augusta, University.  The lawyer (Nugent Law Firm: Jenna Matson), affirmed that these "Appointments of Release" would insure that no more Billing associated with the accident would be needed in order to accumulate a summative total of Charges associated with the July 13th Accident. At her request, I, along with my husband were given a date of Settlement with Jenna Matson, my representative Attorney from the Nugent Law Firm.

After meeting with Attorney Jenna Matson, the settlement conditions, and monetary funds/exchange between the companies on the form was not only unacceptable to me at first sight, but unbalanced because nothing was attributed to the "At-Fault Driver," or his insurance carrier GEICO.  It seemed as if I was paying for being in the accident, and no subjugation on my part as a "Victim" was on my behalf.  Not only was it not attributed to the At-Fault Driver, but I noticed that I was listed as a "Non-Insured Patient."  In essence they had me paying for an accident that I did not cause.  Without knowledge, and/or expertise as an Attorney, I began to question my Lawyer about the itemization of the deductions that Allstate, and GEICO were approving as payments that I would be responsible for to finalize a Settlement. Mentally, I could not assent, therefore I asked questions.

Mistrust, and Fraudulent practices reigned in my mind, but when I found out that I could not call the INSURANCE COMPANIES, I was not only limited, but I felt that I was being blind sighted, and ultimately facing another "head on collision." I needed the knowledge to know what was next. I am not an expert in either field, but I know when I feel like someone is cheating me. At that time, I had not contacted my SHBP Insurance to check on the status of "All Claims," but when I asked questions, my lawyer seemed confused, and/or evading. So, I did what any normal person would do, I would not sign her Settlement documents. **See Attachment: 1 Nugent Law Firm's First Settlement Offer:**

I also asked her to look further into the "At-Fault" Driver's property, estate insurance, and whereabouts, and background, because his accident had him only 500 yards from a known Brewery, and his excessive speed when he decided to enter the oncoming traffic. Her response that this request for further investigation will only cost more deductions from this Settlement Check that she was offering. Upon leaving, I decided that I needed to call my Insurance Agent, but they refused to talk to me as long as I had an Attorney. Therefore, I called, and emailed my Attorney stating that I would no longer use her services, because I felt that the Settlement was not transparent to me as a Victim, and Client of the Nugent Firm. My Reasons were not only apparent, but when I began to "Do the Math," I was sure that I needed to release my Attorney. She told me that I would still have to pay the firm the percentile associated with representation. My decision was final, I wanted to see why I, as a Victim was paying for an Accident that I didn't cause, nor initiate in any way shape, or form. **See Attachment 2: Email to Release Nugent Law firm/Attorney**

In Summary, the Nugent Law firm wants 86% of the total settlement down to the penny. Even my Allstate Representative was surprised at the summation of costs, and services. Yet, not one of the insurance companies offered help, before an Attorney, or afterwards. Either Allstate, and GEICO Insurance Companies are either collusive, or they have tried to do as this "Corporate Bully" has tried to do; "WAIT on the Georgia Statute of Limitations Laws: (Injury to person: Two years (O.C.G.A. § 9-3-33), Fraud: Two years (O.C.G.A. § 9-3-33), Injury to personal property: Four years (O.C.G.A. § 9-3-32), Professional malpractice: Two years, maximum of five years from the act (O.C.G.A. § 9-3-71), Trespass: Four years (O.C.G.A. § 9-3-30) ."

In my submission to the power of Attorneys, Corporations, and collusively, and even intrusive fraudulent practices of "dummy companies," (EnableComp) and lien letters who have responded little to none at all to my request emails, and phone calls. As the Plaintiff, who has recourse, but as a Citizen of the United States. I must employ the Court System as a Civilian. I have no corporate attachment, or affiliations of power, but the court system. Public Law 88-352 (78 Stat. 241). Yet, the Same attorney's digital fingerprints of fraud would not be heeded even when the Insurance Companies agreed with the details, dilemma, and evidence. I believe that "All Defendants, and Corporate entities" that are involved know that other lawyers, who are affiliated or not will not confront this travesty, on such a small level, especially when they deal in millions. They knew of the struggle if I had not signed the initial Settlement. I have no other choice. I called other Attorneys, who immediately told me that they could not assist me even though I no longer had an Attorney.

**ENABLECOMP: EnableComp Billing LLC** (Third-Party Billing, and Payment Division of the Augusta University Medical Trauma Hospital)

**The Plaintiff is seeking full damages in the amount $77,843.35.** The Plaintiff is seeking full damages from the ENABLECOMP: EnableComp Billing LLC (Third-Party Billing, and Payment Division of the Augusta University Medical Trauma Hospital) for pain and suffering associated with its Fraudulent submission of a Lien against any monies associated with the ALLSTATE, and GEICO insurance coverage of the July 13 2023 accident. Also the motives associated his statement to inflict more mental duress, pain, suffering, degradation, and defamation request seen in the email to ALLSTATE that "I, the Plaintiff should go take out a $25,000.00 loan and pay his company." Jordan Mills, Revenue Specialist, MVA, Esquire knew from July 13, 2023 that his very submittal of a Lien was fraudulent.

Even more duplicity, when Plaintiff called State Health Benefit Plan Insurer (SBHP) for a printout of Medical Statements and Billing: Hospital had already received all submitted Medical Expenses from the Accident. AU Hospital Medical Center not only submitted the "Request for Payment," and reimbursement and compensation of funds to the SBHP (State Health Benefit Plan) on the entry date of Services, "All" were rendered in/on behalf of the Plaintiff, Lori Myles. Furthermore, the Plaintiff insists, and proves that the Insurance fees associated with the Accident were submitted by personnel staff, but were later a part of an administrative code, (According to

AU Medical Patient Representative who gave me the print out of Expenses) and placed under holds, liens and "stop payments" to insurance notables in order to excise deductions in and on all insurance claims associated with my Name, Accident, and/or My Insurance Policy funds.

I accuse the **Defendant ENABLECOMP.** EnableComp's unfair intrusive, and fraudulent approach to the Medical Billing, of any, or all AU Medical Trauma Patients for Deceptive Retrieval of Funds for Lawyers/Attorneys, and Corporate Insurance Agents is a "Vulture's Haste to not wait on the Death of its Victim" EnableComp is a Predator without a Nest. If Jordan Mills, Revenue Specialist, MVA (Esquire) of whom I have never met is AU Medical Center's Billing Representative for the City's Hospital of Indigent Care retrieval agent, then the poor man have no defense. Liens, should be factual requests to secure resources owed. I understand the "Third Party" billing procedures, and their purposes as they pertain to law (Georgia Code § 40-3-61 (2022).

Medical liens: Most states limit hospital and health care provider liens to care that was "reasonable" or "necessary." A lienholder is a lender that legally has an interest in your property until you pay it off in full. The lender — which can be a bank, financial institution or private party — holds a lien, or legal claim, on the property because **they lent you the money to purchase** the services rendered, or the property mentioned within a lien. EnableComp had no legal claim whatsoever. The Lawyers, Insurance Companies, and the Fraudulent Vulturistic Company EnableComp knew this since July 13, 2023. Normally, a car accident lawyer can help negotiate with healthcare providers to reduce the amount of liens. Yet, the Nugent Law Firm was its own agent and owner/partner in my case. Truly, the wrong call was made on my behalf. The trifecta of deceit (Lawyer, Liens, and Insurance Losses) has been long and dutiful in every sense of the word.

Georgia is "A-Fault State" for auto accidents," which means that the party found at fault for the crash is responsible for paying compensation. So, therefore why am I being pursued for a loan, or a lien?. This is in contrast to "No-Fault States," where each party's insurance typically pays for all their losses, regardless of fault. Attorney Jenna Matson gave me this information at the beginning of her representation but changed her words later by justifying EnableComp's pursuit. This was the main reason; I decided to terminate our contractual agreement. I felt that I was being deceived with half-truths. For example, when a Complaint of the same nature is

brought as a "Public Complaint against EnableComp; They Respond Differently. (See Attachment Enable Comp).    Yet, EnableComp's Representative Receives Myles' Insurance Card on the Date of Accident, and He Emails me a directive to "TAKE OUT A PERSONAL LOAN." Why Was Myles Still Pursued?  Was it Race, Color, Gender, or Creed?  I don't know, but I know that my "Civil Rights" have been violated in every arena.

Therefore, as a Civil Plaintiff, Victim of an Auto Accident, and ALLSTATE Insurance Client, I invoke my request to have my rights protected by the Federal Government, and Federal Judicial System.  I now wait on my insurance companies to do what is necessary and protect the legalities that bind them to their clients concerned.  Nugent's firm is probably doing what is culturally done and accepted in these circumstances when dealing with consumers. I accuse them, because of the factual data, numbers, dates, and monetary Settlement is fraudulent; even to the ignorant of basic Math.  Their succeeding actions to convince, prove and influence outcome are "Purely fraudulent activities.

According to **Federal Statute: 18 U.S.C. 1033:** "(a) (1) Whoever is engaged in the business of insurance whose activities affect interstate commerce and knowingly, with the intent to deceive, makes any false material statement or report or willfully and materially overvalues any land, property or security—

    (A) in connection with any financial reports or documents presented to any insurance regulatory
        official or agency or an agent or examiner appointed by such official or agency to examine the
        affairs of such person, and
    (B) for the purpose of influencing the actions of such official or agency or such an appointed agent
        or examiner, shall be punished…."

**(18 USC 1033):,**  State v. Banda, 371 S.C. 245, 251, 639 S.E.2d 36, 39 (2006). State v. Edwards, 384 S.C. 504, 508, 682 S.E.2d 820, 822 (2009).,

I request that the Federal Court helps the Plaintiff. Since July 13, 2023, all actions by the defendants have added to the Trauma.  They have created a distress that went beyond the collision of my Automobile Accident. I appeal to the Federal court, be I am not mentally astute, educated, and/or trained to see the full picture of the Fraudulence, and the robbing of the poor through the simplest, yet lowest and traumatic experience of my life: My "CAR ACCIDENT." What's even worse is that despite, Donald R. Heathman, (Deceased)'s decision; "DEATH" was

their stimulus to begin this "fraudulent robbery of the oppressed, weak, and hospitalized." I don't want to even think about what he would have had to endure if he had lived.

**See Attachment: 4_Nugent Law Firm's Second Settlement Offer:**

(a) **Any natural person who knowingly or willfully:**

(1) Makes or aids in the making of any false or fraudulent statement or representation of any material fact or thing:

(A) In any written statement or certificate;

(B) In the filing of a claim;

(C) In the making of an application for a policy of insurance;

(D) In the receiving of such an application for a policy of insurance; or

(E) In the receiving of money for such application for a policy of insurance for the purpose of procuring or attempting to procure the payment of any false or fraudulent claim or other benefit by an insurer.

(2) Receives money for the purpose of purchasing insurance and converts such money to such person's own benefit.

(3) Issues fake or counterfeit insurance policies, certificates of insurance, insurance identification cards, or insurance binders; or

(4) Makes any false or fraudulent representation as to the death or disability of a policy or certificate holder in any written statement or certificate for the purpose of fraudulently obtaining money or benefit from an insurer and commits the crime of insurance fraud.

**(b) Any natural person who knowingly and willfully or with reckless disregard engages** in the following activities, either directly or indirectly, **as an agent for, as a representative** of, or on behalf of an insurer not authorized to transact insurance in this state commits the crime of insurance fraud:

(1) Soliciting, negotiating, procuring, or effectuating insurance or annuity contracts or renewals thereof;

(2) Disseminating information as to coverage or rates;

(3) Forwarding applications;

(4) Falsifying Liens for paid services

(5) Delivering policies or contracts;

(6) Inspecting or assessing risk;

(7) Fixing of rates;

(8) Investigating or adjusting claims or losses;

(9) Collecting or forwarding of premiums; or

(10) In any other manner representing or assisting such an insurer in the transaction of insurance with respect to subjects of insurance resident, located, or to be performed in this state.

**(c) Any natural person who knowingly and willfully with intent to defraud subscribes,** makes, or concurs in making any annual or other statement required by law to be filed with the Commissioner containing any material statement which is false commits the crime of insurance fraud.

**(d) In any prosecution under this Code section, the crime shall be considered as having** been committed in the county of the purported loss, in the county in which the insurer or the insurer's agent received the fraudulent or false claim or application, in the county in which money was received for the fraudulent application, or in any county where any act in furtherance of the criminal scheme was committed.

**(e) A natural person convicted of a violation of this Code section shall be guilty of a felony** and shall be punished by imprisonment for not less than two nor more than ten years, or by a fine of not more than $10,000.00, or both.

**(f) Subsection (b) of this Code section shall not apply to a contract of insurance entered into** in accordance with Article 2 of Chapter 5 of this title.

### FRAUDULENCE and SCHEMING

Concerning **Uninsured and Underinsured Motorists:** In Donovan v. State Farm Mut. Automobile Ins. Co., 329Ga. App. 609, 611(765SE2d755) (2014) (citation and punctuation omitted). To that end, the statute sets minimum requirements for UM endorsements in auto insurance policies. OCGA §33-7-11(a).The statute then defines several terms, including "[un insured motor vehicle[,]" which is defined to include, as relevant here, a motor vehicle for which

the liability insurance covering the vehicle does not cover the UM claimant's full damages. OCGA §33-7-11(b) (1) (D) (ii) (I). See Donovan, 329Ga. App. at611(explaining that one type of UM coverage is an "excess policy which provides for UM insurance in excess of any available liability insurance").

The statute goes on to explain that a UM claimant may file an action against the at-fault driver, and, if there is a belief that the UM claimant will be filing a claim against his UM insurer, the UM claimant must also name the insurer as a defendant. OCGA §33-7-11(d). See Ward. Allstate Ins. Co., 265Ga. App. 603, 603-604(595SE2d 97) (2004) ("Generally, the insured's right to recover under an uninsured motorist policy is established by obtaining a judgment against the uninsured motorist, thus showing that he insured is legally entitled to recover those damages.") (citation and punctuation omitted). The insurer is entitled to certain protections in the underlying tort lawsuit and in the calculation of how much the insurer may owe the UM claimant. OCGA § 33-7-11 (d), (f), (h), (i).

Finally, as stated above, subsection(j) provides that if an insurer fails to pay a UM coverage demand within 6 0days, and such failure is found to be in bad faith, "the insurer shall be liable to the insured in addition to any recovery under this Code section for not more than25percentof the recovery or $25,000.00,whichever is greater, and all reasonable attorney's fees for the prosecution of the case under this Code section." (Emphasis supplied.) Cotton States Mutual Ins .Co., 185Ga. App. 66,69-70(2) (363SE2d303)(1987).

Therefore, even the Lawyer fees should be considered. The contract states that a percentage should be applied because the lawyer helps to secure fees. The Nugent Law Firm did not help secure the fees, they instead sought to deceive, deter, and deduce any/all assets immediately evident to the Plaintiff. As to attorney fees, OCGA §33-7-11(j) states that, if bad faith is found on the part of the insurance company in refusing to pay a demand within60days, the insured shall be entitled to all reasonable attorney's fees for the prosecution of the case under this Code section. The question of bad faith, the amount of the penalty, if any, and the reasonable attorney's fees ,if any, shall be determined in a separate action[7]filed by the insured against the insurer after a judgment6Unlike the first issue discussed above, research reveals that we have not squarely addressed this issue. 7Under a prior version of the statute, a UM claimant was required to raise the issues of the UM insurer's bad faith and attorney fees in the tort action

against the uninsured motorist. See McCall. Allstate Ins. Co.,251Ga. 869, 871(2) (310SE2d513) (1984). However, the statute was changed to include this as a separate action .As the Supreme Court explained in Lewis. Cherokee Ins. Co., 258Ga. 839, 841n.2 (375 SE2d 850) (1989) ("Lewis I").

**Categorically, concerning all defendants; except the deceased: Federal Statute: 18 U.S.C. 1033:** states that (a) (1) Whoever is engaged in the business of insurance whose activities affect interstate commerce and knowingly, with the intent to deceive, makes any false material statement or report or willfully and materially overvalues any land, property or security—

> (A) in connection with any financial reports or documents presented to any insurance regulatory official or agency or an agent or examiner appointed by such official or agency to examine the affairs of such person, and
> (B) for the purpose of influencing the actions of such official or agency or such an appointed agent or examiner, shall be punished...."

Ironically, I did not choose to be in the July 13, 2023 Accident, but the Collisions with Nugent Law Firm, EnableComp, Allstate, GEICO, Nugent Law Firm were direct attacks to defraud, deceive, delay, and cause a Post Traumatic Event in my life; that I have had to fight without America's promise as "God's Given" Civil Rights. Restitution should be made for "All Requested Monies" and Pain and Suffering. Like July 13th, I didn't want to die, and I was not willing to be decapitated.

Therefore, I ask for help through the Federal Court System. Therefore, I come forth pro se, looking for help, and Judicial leniency because, no other "LAWYER" would help me resolve my misfortune, because of an unspoken, silent acquiesce aligned with "Comradery and/or Corruption. "If I had not gone through this struggle; there is no way, I would have known of the Comradery that exists between the three Business entities. Unbeknownst to the "ACCIDENT VICTIMS" who have been hospitalized, traumatized, and in some cases killed. There is truly a "Vulture Brotherhood Approach" that visit not only the bloody scenes of accidents, but who grace our Television, Social Media, and Homes when we survive some of the most horrific accidents by the "Grace of God."

Conclusively, correspondence with all Defendants has been long, negated, and consistent. I do not want the element of a two-year limit to close the doors of justice by default. Therefore, I have added several additional attachments, emails, photos, insurance documents to assist with my complaint. Hopefully, as a plaintiff, coming to the United States District Federal Court pro se, I have fulfilled the basic legal paperwork, and/or forms so that acceptance into the court system will be the first threshold I have passed.

Plantiff, Lori Myles

7 Park Place Circle
Augusta, Georgia 30909

UNITED STATES POSTAL SERVICE.                    **Retail**

**P**          US POSTAGE PAID
              **$11.70**    Origin: 30909
                           01/29/25
                           1204870604-29

PRIORITY MAIL®

                                    2 Lb 0.20 Oz
                                    RDC 03

EXPECTED DELIVERY DAY:  01/31/25

                                    B004

SHIP
TO:
  PO BOX 8266
         SAVANNAH GA 31412-8266

Clerk,
U.S. District Court
Post Office Box 82
Savannah, Georgia